HERBERT H. DANIEL *ET AL.*, PLAINTIFFS, v.
BOROUGH OF OAKLAND, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided May 10, 1972.

236

*Messrs. Losche & Losche,* attorneys for plaintiffs.

*Mr. William DeLorenzo, Jr.,* attorney for defendant.

TOSCANO, J. C. C. (temporarily assigned). Plaintiffs, residents of the Borough of Oakland, filed a complaint in lieu of prerogative writs as consumers of water from the borough and as representatives of all the consumers of water in the borough, challenging the validity of an ordinance dated September 10, 1970 which increased the water charges retroactively to cover a period from July 1 to September 10, 1970. They allege that the ordinance is illegal, violates the constitution and laws of New Jersey and also impairs the constitutional provision on contracts.

The facts disclose that the borough operates its own water utility on a self-liquidating basis. Due to an increase in the costs of operation during the early part of 1970, the borough officials became aware of a need for an increase in the rates charged for water. The public was made aware of this at various meetings in the early part of the year and of the fact that such an increase would be made necessary unless water revenues increased. The mayor and council held off introducing of the ordinance in hope of anticipated increase in revenues. This did not materialize. As a result, the ordinance was adopted in September 1970 and expressly made effective as of July 1, 1970.

Plaintiffs seek a return of monies to the residents of the borough using water during the period from July 1 until the effective date of the ordinance in 1970, claiming that it was unlawful to have a retroactive date for a rate increase. There is approximately $4,000 in monies that would have to be returned, and based upon the number of water users, this would amount to $1 a family. The result of be-

ing required to return·the monies would necessitate the inclusion of an additional amount in the municipal budget for 1971. In addition, a deficit would be created under the law and would affect the bonding capacity of the borough.

The argument advanced by plaintiffs is that the retrospective application of the ordinance would impair contractual obligations and divest vested rights. Consequently, the ordinance as applied contravenes the Constitution of the United States. See *Gilman v. Newark, 73 N. J. Super.* 562, 598 (Law Div. 1962).

The Borough adopted the ordinance under the statutory authority of *N. J. S. A.* 40:62–77:

> The governing body * * * may make * * * all such ordinances * * * as it may deem necessary and proper * * * for fixing and collecting the water rents or prices for water * * *.

The statute is silent as to retroactive ordinances, but in 1928 the Chancery Court explained that this provision:

> * * * grants no power to Bayonne to make retroactive water rates, but only the power to fix and collect the water rents and prices established in advance for the service to be rendered. [*Federal Shipbuilding & Co. v. Bayonne,* 102 *N. J. Eq.* 475, 480 (1928)]

The court referred to *Jones v. Bloomfield,* 69 *A.* 1106 (N. J. Ch. 1908), to support this statutory construction. Both the factual and legal situations in *Jones* were not on all fours with that before the Chancery Court in 1928. In *Jones* a municipal ordinance established flat rates for water charges and reserved the right of the municipality to set meters and charge accordingly. Bloomfield did set up water meters, but it failed to notify the consumers to that effect, and mistakenly billed the consumers pursuant to the flat rate charge. The court concerned itself solely with the interpretation of the ordinance, and concluded that merely setting the meters without adequately notifying the consumers was not an effectual election of the reserved right to change from the flat rate. The fact that the failure to notify

was the result of a mistake in billing did not give Bloomfield the legal right to collect the difference between the flat rate and the meter rate.

The situation in *Federal Shipbuilding & Co. v. Bayonne, supra,* was that the municipality entered express contracts, with stipulated rates, to supply water to a certain company. Later, a resolution was passed, increasing the rate to be paid by the company for all water theretofore furnished as well as for water thereafter furnished. The court found that the resolution destroyed the rights vested in the company by the written contracts, and that the statutory authority quoted above did not grant to the municipality power to make any retroactive resolutions.

The statutory provision in effect in 1928 is almost identical to that applicable to the case at bar. However, there has been a drastic change in the underlying state constitutional principles. The *New Jersey Constitution* of 1947 now in effect directs that laws concerning municipalities be liberally construed in their favor, *Art.* IV, § VII, par. 11. On the other hand, the *Constitution of* 1884, effective in 1928, contained no such directive. The court in *Union Cty. Bd. of Chosen Freeholders v. Union Cty. Park Comm'n,* 41 *N. J.* 333 (1964), had declared that the 1948 Constitution

* * * was intended to obviate earlier judicial decisions which had taken the position that grants of power by the Legislature to its political subdivisions should be construed narrowly and that doubt as to the existence of any asserted power should lead to its denial. [at 339]

■■ Since neither the New Jersey Constitution nor the United States Constitution prohibit the enactment of retroactive legislation by a municipal government, the power to enact such can be read into *N. J. S. A.* 40:62–77 whenever the power is necessarily or fairly implied by, or incidental or essential to, the powers expressly conferred by that statute, as long as the exercise of the power is not prohibited by either the New Jersey Constitution or law, *N. J. Constitution* (1947) *Art.* IV, § VII, *par.* 11.

Plaintiffs' contention is that the receipt of water from July 1 to September 2, 1970, under the then existing ordinance, gives them a vested right in, or a contract obligation to pay, the water rates established by that ordinance. Any legislation affecting the water rates for that period impairs such right or obligation, and is therefore prohibited by the Constitution and law. This Court cannot accept plaintiffs' conclusion because it finds their basic premise untenable.

The matter of charges for water furnished by a municipality has been considered as a subject of contract rather than being classified as a tax, for the purpose of resolving particular issues; e. g., the sufficient certainty of such charges in order to permit the enforcement of payment thereof, *Lehigh Valley R. R. Co. v. Jersey City*, 103 *N. J. L.* 574, 576 (Sup. Ct. 1927); the liability of the landowner for water used by a third party, *Jersey City v. Morris Canal and Banking Co.*, 41 *N. J. L.* 66 (Sup. Ct. 1879), and the liability of the landlord's estate for a lien for water supplied to a tenant, *Ford Motor Co. v. Kearny*, 91 *N. J. L.* 671 (E. & A. 1917). The proprietary character of a public water utility has been determined with respect to the issues of municipal immunity in tort, *Cloyes v. Delaware Tp.*, 23 *N. J.* 324 (1957); a municipality's right to sell lands constituting a water reserve, *East Orange v. Bd. of Water Com'rs, East Orange*, 73 *N. J. Super.* 440 (Law Div. 1962), and a municipality's duty to supply water to all of its inhabitants, *Reid Development Corp. v. Parsippany-Troy Hills Tp.*, 10 *N. J.* 229 (1952).

The instant issue of whether a water rate fixed by an ordinance should be treated as a subject of contract, to the extent that such rate cannot be changed after the water has been supplied, has never been resolved by the Courts. The considerations in the above cited cases that led to the findings of contract and proprietary function are not entirely water utility managed by a municipality cannot be treated applicable to the case at hand. In other words, a public water utility managed by a municipality cannot be treated

the same as a private corporation in all instances. See *Reid, supra.*

Defendant has pointed out that all taxpayers of the borough, whether or not they are consumers of water, are owners of the borough's water utility. It is important to the taxpayers that the utility be operated on a self-sustaining basis so that it need not be subsidized by general taxation. The particular concern of the consumers is that the service always be available and sufficient to satisfy their requirements. The consumers and other taxpayers are in no position to bargain for the amount of water charges, because their elected representatives are the ones who fix the rates. Since the electorate and their representatives are, theoretically, of one mind, there can be no meeting of the minds in the purely contract sense in relation to the amount of water charges.

In light of the preceding analysis, this court finds that in the peculiar factual situation at hand there is no contract obligation to pay a rate fixed in advance. Nor does this court find that plaintiffs acquired any vested rights under the initial ordinance. The concept of "vested rights" has been described as

* * * a present fixed interest which in right reason and natural justice should be protected against arbitrary state action—and innately just and imperative right that an enlightened free society, sensitive to inherent and irrefragable individual rights, cannot deny. [*Pennsylvania Greyhound Lines, Inc. v. Rosenthal*, 14 N. J. 372, 384–385 (1954)]

It is the opinion of this court that any interest plaintiffs may have had under the initial ordinance does not rise to the level of that described above. The area of fixing water rates is one in which a municipality should be permitted some latitude of discretion. The court in *Reid Development Corp. v. Parsippany-Troy Hills Tp.*, 10 N. J. 229 (1952), recognized that a municipality can exercise discretionary authority when providing water for the public and private

uses, and can impose conditions reasonably bearing on the exercise of this function.

 The two-month retroactivity of the ordinance amendment in question bears a reasonable relation to the function of fixing appropriate water rates. By reason of this retrospective effectiveness the incidence of the increase in rates falls upon those who consumed water during that period of time in which the loss in revenues was incurred. It is evident, then, that the exercise of the authority to enact retroactive ordinances was not arbitrary or illegal in the case at bar. Seeing that none of the plaintiffs have asserted the standing of a new homeowner, who relied on a water bill issued under the original ordinance when closing title and has since been charged with the increased rate for a period during which the previous owner received the water, it will not be necessary to decide if such an individual is entitled to a credit for the increase.

For the foregoing reasons, judgment is entered for defendant and the complaint dismissed.